AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 1 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. **19MJ4273**
)
black LANIX cellular telephone )
IMEI: 358911082528353 )
Seized as FP&F No. N-3 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC § 841(a)(1) | Conspiracy to Distribute a Controlled Substance |
| Title 21 USC § 846 | Possession with the Intent to Distribute a Controlled Substance |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF DEA TASK FORCE OFFICER CHRISTOPHER MEHMEL

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Mehmel, ~~Task Force Officer~~ Special Agent
*Printed name and title*

Sworn to ~~before me and~~ signed in my presence.

Date: 10/1/19

_____
*Judge's signature*

City and state: San Diego, CA    Hon. Michael S. Berg, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

> A black LANIX cellular telephone
> IMEI: 358911082528353
> Seized as FP&F No. N-3
> **"Target Device 1"**

**Target Device 1** is currently in the possession of the U.S. Drug Enforcement Administration, 2255 Niels Bohr Ct, San Diego CA 92154.

## **ATTACHMENT B-1**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of 30 days:

a. tending to indicate efforts to import or transport methamphetamine for purposes of distribution, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation or distribution of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation or distribution of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation or distribution of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 841 (Possession of Methamphetamine with Intent to Distribute) and 846 (Conspiracy to commit the same).

# AFFIDAVIT

I, Christopher Mehmel, Special Agent, Drug Enforcement Administration, being duly sworn, declare and state the following:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

   a. A black LANIX cellular telephone

   IMEI: 358911082528353

   Seized as FP&F No. N-3

   **"Target Device 1"** as further described in Attachment A-1, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 (Possession of Methamphetamine with Intent to Distribute) and 846 (Conspiracy to commit the same), as further described in Attachment B-1.

   b. A black Alcatel cellular telephone

   IMEI: 015295005409205

   Seized as FP&F No. N-4

   **"Target Device 2"** as further described in Attachment A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 (Possession of Methamphetamine with Intent to Distribute) and 846 (Conspiracy to commit the same), as further described in Attachment B-2.

   c. A black Alcatel cellular telephone

   IMEI: 015174003529688

   Seized as FP&F No. N-5

   **"Target Device 3"** as further described in Attachment A-3, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 (Possession of Methamphetamine with Intent to

Distribute) and 846 (Conspiracy to commit the same), as further described in Attachment B-3.

2. The requested warrant relates to the investigation and prosecution of Iesha VILLA ("Defendant") for possessing approximately 18.96 kilograms (41.80 pounds) of methamphetamine with the intent to distribute. *See U.S. v. VILLA*, Case No. 19-cr-2998 (S.D. Cal.) at ECF No. 12 (Information). The **Target Device 1**, **Target Device 2**, and **Target Device 3** (collectively, "**Target Devices**") are currently in the evidence vault located at 2255 Niels Bohr Ct, San Diego CA 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5. I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA"), United States Department of Justice. I have been employed by DEA since May 2012, and I have participated in investigations involving organized crime, drug trafficking and money laundering activities. I also received four months of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Currently, I am assigned to the DEA San Ysidro Resident Office, Enforcement Group 73, in San Diego, California. Prior to my employment with the DEA, I was employed as a Border Patrol Agent. I graduated from the Federal Law Enforcement Training Center in Artesia, New Mexico in December 2007.

6. As an SA, I have participated in numerous investigations involving drug trafficking organizations. Pursuant to my participation in those investigations, I have performed various tasks which include, but are not limited to: (a) functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments; (b) functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in drugs and those suspected of trafficking drugs; (c) interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments); (d) participating in the tracing of monies and assets gained by drug traffickers from the illegal sale of drugs (laundering of monetary instruments); and (e) participating in investigations involving the purchase of controlled substances, the execution of search warrants, surveillance in connection with narcotic investigations, and the interview of confidential sources.

7. Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods employed by controlled substance traffickers to smuggle and safeguard controlled substances, distribute controlled substances, and collect and launder the proceeds from the sale of controlled substances. These methods include, but are not limited to: the use of wireless communications technology, such as cellular telephones and prepaid cellular accounts; counter surveillance; false or fictitious identities; and coded or vague communications in an attempt to avoid detection by law enforcement.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio

files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to import or transport methamphetamine for purposes of distribution, or some other federally controlled substance, from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation or distribution of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation or distribution of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation or distribution of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On July 12, 2019, at approximately 8:20 am, Defendant, a citizen of the United

4

1  States, arrived at the Interstate 8 Border Patrol Checkpoint in Pine Valley, California.
2  Defendant was the driver and sole occupant of a red 2003 Honda Accord bearing California
3  license plate 8KCS488 (hereinafter "Accord").  A Border Patrol Agent ("BPA") manning
4  the primary inspection area observed the Accord was approaching the inspection area. Due
5  to the defendants driving behavior on approach to the primary inspection lanes, the
6  defendant was referred for secondary inspection.

7       11.  In the secondary inspection area, BPAs questioned Defendant about her
8  country of citizenship.  Defendant answered that she was a United States citizen and
9  provided her identification card.  BPAs noticed that Defendant appeared nervous and could
10 not sit still.  One of the BPA asked Defendant to exit the vehicle, and Defendant complied.
11 A BPA asked Defendant if she was the owner of the vehicle, to which Defendant replied,
12 "huh." He asked again and she replied "Yes."  He next asked Defendant where she was
13 going, and Defendant again replied with "huh."  That BPA repeated the question again, and
14 Defendant replied "Fresno."  He then asked if she lived in Fresno, and Defendant replied
15 that she did. The BPA asked Defendant if she had traveled into Mexico. Defendant stated
16 that she went to Mexicali to visit her boyfriend.  He then asked which POE she drove through
17 to come back into the United States.  Defendant again replied by saying, "huh."  The BPA
18 repeated the question. Defendant replied by saying "the other one."  The BPA asked which
19 one. Instead of identifying the POE, Defendant again replied with "the other one."

20      12.  The BPA then asked Defendant's consent to conduct a canine sniff of the
21 exterior and interior of the vehicle, and also for a manual search of her vehicle. Defendant
22 replied, "yes, go ahead."  Eventually, BPAs discovered an aftermarket compartment inside
23 the gas tank which contained a total of 31 vacuum sealed packages. The packages weighed
24 approximately 18.96 kilograms (41.80 pounds), and field-tested positive as
25 methamphetamine. Defendant was subsequently arrested and the **Target Devices** were
26 seized from defendant's vehicle. The vehicle was registered in the defendant's name.

27      13.  Later, DEA agents and Task Force Officers read Defendant her *Miranda* rights,
28 and she agreed to speak to agents without an attorney present. Defendant denied knowledge

of the drugs in her vehicle, but admitted she was in the area for the purpose of picking up bulk currency to bring to Mexico. Defendant stated she was to be paid $4,000 from an unknown individual in Los Angeles, whom she had met one time approximately three weeks prior. Defendant also admitted that the phones recovered from her vehicle belonged to her.

14. In light of the above facts, Defendant's statements, and my own experience and training, there is probable cause to believe that Defendant was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States and/or the distribution of narcotics within the United States. The possession of several phones is common among narcotics traffickers.

15. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

16. Based on my training and experience, it is not uncommon for narcotics traffickers to know the severe criminal penalties that are associated the transportation or importation of methamphetamine. They also know that the criminal penalties for smuggling bulk cash are less severe.

17. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on 30 days, which was the day following Defendant's arrest.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. At the time of Defendant's entry into the United States, law enforcement officers conducted a manual review of the **Target Devices** with the defendant's permission.

7

I have not included any information obtained from that manual review in this affidavit and believe that probable cause exists to search the **Target Devices** without that information. On the date of her arrest, Defendant gave agents consent to search **Target Devices**. However, last week, as agents were preparing to forensically search **Target Devices**, Defendant withdrew her consent through her attorney. However, I believe probable cause exists to search the **Target Devices**.

## CONCLUSION

22. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841 (Possession of Methamphetamine with Intent to Distribute) and 846 (Conspiracy to commit the same).

23. Because the **Target Devices** was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from 30 days.

24. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachments A-1 through A-3, and seize the items listed in Attachments B-1 through B-3 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Task Force Officer Christopher Mehmel
Drug Enforcement Administration

Subscribed and sworn to before me this 1st day of October, 2019.

Hon. Michael S. Berg
United States Magistrate Judge

8